BAKER, JUDGE:
The claimants brought these claims being considered herein to recover for damages to their respective properties as the alleged result of respondent’s negligent design and m ainíenance o f the dr ainage s ystem onU.S.R oute 52, in D elbarton, Mingo County. U.S. Route 52 is a road owned and maintained by respondent. The Court is of the opinion to make awards to the claimants in these claims for reasons more fully set forth below. These claims were consolidated for hearing by the Court.
Both of the claimants own property and reside on the west side of U.S. Route 52 approximately two miles south of Delbarton. At this location, U.S. Route 52 is a straight stretch of road that traverses in a north-south direction. The hillside on the east side of U.S. Route 52 slopes to the roadway. Claimants’ properties on the w est s ide g radually s lope t oward P igeon Creek, which is 1 ocated a bout o ne-hundred-fifty feet from the road surface of U.S. Route 52. In the past, the road surface of U.S. Route 52 was in a state of disrepair due to standing water on the road. As a result of the water on the road, there were several automobile accidents. Consequently, in 1987, respondent corrected the problem of standing water by creating a tilt in the road surface of U.S. Route 52 at this location to channel water to *183 the west side of the road. In 1993, respondent widened the paved surface when it engaged a contractor to pave the shoulders of the road.
After these measures had been taken by respondent, claimants allege that they began to experience excessive water drainage from the east side of U.S. Route 52. Moreover, across the road about eight to ten feet south of the Kennedy and Stacy property, a neighbor (identified as Neil Robertson) residing on the east side of U.S. Route 52 placed a paved driveway which was twelve by seventy-five feet. This driveway was constructed by the neighbor without a permit from respondent as required by law. The driveway exacerbated the water problems being experienced by both of the claimants at that time, because the neighbor covered a bridge placed by respondent for water to flow through the ditch line. The drain that he placed beneath his driveway apparently was inadequate to carry all of the water in the ditch line so it flowed across the road onto claimants’ properties.
In June 1995, claimant Kenneth Andy Kennedy contacted Governor Caperton’s office about his drainage problem and he was referred to respondent. Commissioner Fred VanKirk, in a letter dated July 6, 1995, stated “that the Division of Highways will do whatever we feel is necessary to improve drainage patterns as related to our roadway. Plans have been made to install a box and grate under the driveway which enters onto US 52 across from your property. This should alleviate the problem of water coming down the driveway out onto 52 and eventually crossing the highway onto your property.” The letter further advised claimant Kennedy that his building sits in a low area which acts a natural drainage area. The driveway slopes toward the building and there are no slopes on the sides of the building so the water is channeled toward the building. With no gutters or downspouts, all the run off from the roof just ponds around the building.
While respondent eventually removed the Robertson driveway, the drainage structure (“box and grate”) was not installed. Both claimants allege that respondent’s failure to respond promptly to claimants’ complaints caused the damages from the water run-off to continue, worsening the problems already being experienced by claimants. It is the position of claimants, that the failure of the respondent to address the drainage problem is the proximate cause of the damages sustained to their respective properties.
The Kennedy property has been in the family of claimant Kenneth Andy Kennedy since the 1920's. The residence in which claimant makes his home with his wife was built on fill material in 1957. To the southwest of their residence is a building seventy five feet from U.S. Route 52 which was constructed by the Mingo County Economic Opportunity Commission in 1970. This structure has a tin roof, but does not have gutters or downspouts. The rear of the building is about ten feet from Pigeon Creek. Until 1986, the Mingo County Economic Opportunity Commission occupied claimant Kennedy’s building. During this time, Mr. Kennedy asserted that he had no knowledge of any water problems nor had he received *184 complaints from the Mingo County Economic Opportunity Commission which used the building for storage of equipment that required a dry place.
At some time in the early 1990’s, claimant began operating an auto body shop in the building which is known as Kennedy Auto Sales. He also sells used cars that he has parked in the lot in front of the building adjacent to U.S. Route 52 and with a driveway which abuts U.S. Route 52. This building has experienced water problems since 1987. Claimant’s wife, Patricia Kennedy, stated that she telephoned respondent’s main office in Charleston in the spring in the early 1990's to describe the water problem and she also telephoned the Mingo County office at least six to eight times during the 1990’s. Claimant alleges that excessive water flows from U.S. Route 52 bringing mud and water into the building. Clean up efforts may take about one-and-a-half days to remove the mud from the floor after the water recedes. The water has been as high as six to seven inches in the building.
In an attempt to remedy the problems with the water and mud getting into his building, Mr. Kennedy first installed a four-inch perforated pipe covered with gravel on two sides of the building. This action did not remedy the situation because sand and water filled the pipe so he dug a ditch (described as a “moat”) about two feet deep along the sides of the building allowing the water to flow into Pigeon Creek, but sand kept filling in the ditch. Since this effort also failed effectively to eliminate the water problem, he installed an eight-inch perforated pipe covered with gravel with a drain box at the front door which connects to a 12-inch pipe from which the water flows to the creek. This project, completed in July 1999, provided some relief from the water problems experienced in the building; however, water and sand still flow onto the gravel driveway in front of the building which requires constant maintenance efforts on his part. Mr. Kennedy has tried to make improvements to his property with a backhoe and gravel in an attempt to repair the damages caused by the water. The cost of these improvements to his property is estimated in the amount of $4,700.00. He does not have a homeowner’s insurance policy that provides coverage for the damages to his property.
Claimant Betty Williams Stacy bought her residence on U.S. Route 52 in 1978. On the north side of the Stacy residence, which is to the south of the Kennedy property, there is a twenty-four by eighteen foot, one-and-one-half vehicle garage with a concrete floor. Water that originates across the road flows onto claimant’s driveway creating gullies and ridges in the partially paved driveway and then flows into the garage. Although the Stacy property experienced water problems prior to 1993, Harvey Stacy, claimant’s husband, testified that these problems “got tremendously worse” in 1993. When the garage floor started cracking in 1993, he dug a ditch in front of the garage door in an attempt to divert the water away from their residence. While the Stacy residence has a gutter and downspout on the north comer and a corresponding drainage system on the south comer, the gutter on the north comer of the residence empties water directly onto the ground.
*185 Both claimants offered respondent a right of way to perform any necessary repairs to alleviate the water problems that they are experiencing. The damage sustained to Mrs. Stacy’s garage was estimated in the amount of $10,000.00 to $11,000.00. She does not have a homeowner’s insurance policy that provides coverage for the damages to her property.
Respondent’s position is that it took immediate corrective measures as soon as it received notice regarding the drainage problem on U.S. Route 52. Respondent acknowledged that the road is “super elevated” toward claimants’ property and that it has always been that way. The paving performed in 1993 did not alter the elevation of the road. The respondent had the berm paved on each side. It contends that nothing was done during the project to super-elevate the surface of the road. This road is designed to channel water flow toward the west side of the road. At the time of the paving project, claimants’ neighbor’s driveway was not paved and there were no signs of erosion. Thus, a box and grate were not installed. However, Senior Designer Phillip Van Daniels explained that when claimants’ neighbor p aved his driveway, the characteristics of the drainage system changed and a box and grate became necessary. On two occasions, claimants’ neighbor tore out the ditch without respondent’s permission, in order to install a pipe and pave over it. When the driveway was finally removed and the ditch was reconstructed, an inlet box was no longer necessary. Likewise, Senior Engineer Technician Jimmie Messer testified that he was present at the site on an occasion when water was present and he did not observe water flowing on claimants’ property. Respondent asserts that both claimants lack proper drainage systems on their respective properties and this has exacerbated the water problems which they experience.
The Court has held that respondent has a duty to provide adequate drainage of surface water, and drainage devices must be maintained in a reasonable state of repair. Haught vs. Dept. of Highways, 13 Ct. Cl. 237 (1980). In claims of this nature, the Court will examine whether respondent negligently failed to protect a claimant’s property from foreseeable damage. Rogers vs. Div. of Highways, 21 Ct. Cl. 97 (1996).
In the instant claims, the evidence establishes that respondent failed to maintain the drainage system on U.S. Route 52 at the location of the c laimants’ properties in a reasonable state of repair to protect these properties from excessive water flowing in the ditch line on the east side and from the water flowing on the road surface itself. Respondent failed to take remedial action when it had adequate notice as evidenced by the letter from Commissioner VanKirk. The road surface is lower on the west side to provide drainage for surface water which accumulates on the road surface. This is necessary to protect the traveling public using U.S. Route 52; however, respondent also has a duty to protect the adjacent property owners from excess water which flows from the roadway onto their properties. In the instant claims, respondent is responsible for casting ground water onto claimants’ property. *186 Respondent knew or should have known that damage to claimants’ real property would occur. Respondent should have been more diligent in preventing the claimants’ neighbor from dismantling respondent’s drainage system on U.S. Route 52. Therefore, the Court is of the opinion that respondent, once having notice of the situation on U.S. Route 52, negligently failed to take immediate and reasonable action to prevent any further damage to claimants’ properties from excessive water flowing across the road.
Notwithstanding respondent’s negligence, the Court is also of the opinion that both claimants bear some responsibility for the damages to their properties as they also were negligent. Neither of the claimants maintained adequate drainage systems o n t heir r espective p roperties t o de al w ith w ater r un-off f rom their o wn structures. Moreover, the claimants failed to establish the actual amounts of monetary damages which they sustained to their properties. In the Kennedy claim, claimant K ennedy estimated da mages in t he a mount o f $4,700.00 f or r estoration work done on his driveway and car lot. In the Stacy claim, Mr. Stacy produced an estimate for damages in the amount of $11,000.00. The Court is of the opinion that this estimate is suspect and that $7,000.00 is an amount that the Court deems would be fair and reasonable for replacing the concrete floor in the garage.
In a comparative negligence jurisdiction, such as West Virginia, the negligence of a claimant can reduce or bar recovery of a claim. The Court finds that each claimant was 49% negligent for the resulting damages to his or her property. Since the negligence of neither claimant is greater than or equal to the negligence of respondent, each of the claimants may recover 51% of his or her loss.
In accordance with the findings of fact and conclusions of law as stated herein above, the Court is of the opinion to and does make reduced awards to the claimants in these claims.
Award of $2,397.00 to claimant Kenneth Andy Kennedy d/b/a Kennedy Auto Sales.
Award of $3,570.00 to claimant Betty Williams Stacy.